[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE VERDICT AND/ORIN THE ALTERNATIVE MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT
In the instant medical malpractice action the jury returned a verdict in favor of the plaintiff, Executrix of the estate of a patient who died as a result of the professional negligence of the defendant Dr. Arthur Seltzer.
The patient was admitted to Yale New Haven Hospital for the purpose of a cardiac catheterization, a diagnostic procedure. During the course of said procedure a blood vessel was perforated permitting blood to escape into the retroperitoneal area.
No complaint was made concerning the fact of a perforation as this is a recognized risk of the procedure and may occur without negligence on the part of a physician.
The thrust of the claim herein was directed to the post procedure era. It was alleged that Dr. Seltzer failed to monitor, diagnose and treat the patient's condition in that he failed to order and infuse blood in a timely fashion and in adequate amounts when it was evident that she was suffering from a severe retroperitoneal bleed. The patient ultimately bled to death.
There was compelling evidence in support of the verdict.
No exceptions were taken to the court's instructions to the jury and no complaint is made concerning the size of the verdict.
The scope of the instant motion is limited to claims of error with respect to certain evidential rulings.
By way of background it should be noted that at the time jury selection commenced the defendants were Yale-New Haven Hospital and Dr. Seltzer and his group (Cardiology Associates). Subsequent to the commencement of jury selection the defendants Dr. Seltzer and Cardiology Associates filed a Motion to Preclude "the plaintiff from offering at trial the testimony of Sherwin Kevey, M.D." (#199)
The plaintiff had intended to call Dr. Kevey as an expert witness in her case against all defendants. A review of said physician's testimony in a discovery deposition (court's Ex. I (Id.)) indicated he implicated all defendants. The facts and reasons set forth in the deposition were in part overlapping and intertwined because of the nature of the problem at hand. CT Page 6223
The basis of the Motion to Preclude was that said expert had not been disclosed in a timely fashion and that to permit his testimony would be prejudicial. The court made a preliminary finding that the plaintiff had not demonstrated good cause for the tardy compliance with Rule 220D and thereafter granted the Motion.
As a result of the granting of the Motion To Preclude the plaintiff settled her claim against the hospital and the case proceeded to trial against Dr. Seltzer and Cardiology Associates.
It was at this juncture that the court inquired of defense counsel for remaining defendants whether he intended to assert a claim for "allocation" under § 52-572g(h) C.G.S. by reason of the alleged negligence of a settled or released party to which counsel responded in the affirmative. The court advised counsel that as it understood the rule if damages are determined to be proximately caused by the negligence of more than one party then each party as to whom recovery is allowed shall be liable to the claimant only for his proportionate share of the damages. (§ 52-572g(c) C.G.S.) and that negligence of a released or settled party would be taken into consideration. (Section 52-572h(n) C.G.S.). The court then advised counsel that while the plaintiff had the burden of proof with respect to the claim against the defendants Dr. Seltzer and Cardiology Associates, said defendant s if they claimed allocation as concerned a released or settled party, they must raise that issue in a definitive fashion and as to that issue they had the burden of proof which because of the nature of this case would require expert medical testimony. Defense counsel disagreed with the position of the court claiming he had no obligation to raise the issue with respect to liability of others (for allocation purposes) nor did he have any burden of proof in this regard but rather the aforementioned elements simply arose by virtue of the application of the statute. Counsel stated he was disinclined to take the position that the clients were not liable and yet at the same time argue that if his clients were liable there were others who should "share" in any recovery by the plaintiff.
In view of the position of defense counsel's refusal to assert a "claim" relative to allocation in a definitive fashion or assume the burden of proof in this regard, the court concluded "allocation" was not an "issue" in the case and did not refer to it when giving its preliminary instructions to jury to which no exception was taken. Plaintiff's counsel did not refer to the CT Page 6224 matter in his opening statement nor did defense counsel.
Following the conclusion of the plaintiff's case defense counsel then attempted to introduce into evidence the deposition of Dr. Kevey which he had successfully moved to preclude. The plaintiff objected to this offer of evidence. The court sustained the objection on the grounds there had not been a proper P.B. Section disclosure by the defendants to call Dr. Kevey as an expert witness, that it would be fundamentally unfair to permit the defendants to utilize Dr. Kevey's testimony against the plaintiff since plaintiff settled her claim against the hospital because said expert witnesses' testimony was precluded pursuant to defendants' motion and that in view of defendants' position relative to allocation as noted above evidence as to malpractice on the part of another for the purpose of allocation was not probative of an issue in the case.
The defendants also contend the court erred in granting plaintiff's Motion to Preclude defendants' supplemental list of twelve proposed experts who purportedly would testify as to negligence on the part of the hospital (#20809). The Supplemental Disclosure was dated May 5, 1995, some several days into jury selection.
The plaintiff's objection to said disclosure was sustained. The disclosure was not only untimely but flawed in terms of its content. It failed to specify as to each of the witnesses the subject matter on which the expert was expected to testify, the substance of the facts and opinions to which each expert was expected to testify and a summary of the grounds for each opinion. There had been no previous indication that Dr. Wolfson, Dr. Seltzer or Dr. Kett would render any opinions that Yale New Haven Hospital was negligent. Further at the time of Dr. Seltzer's discovery deposition defense counsel objected to questions asked by plaintiff's counsel directed to eliciting Dr. Seltzer's opinion concerning whether the applicable standard of care had been violated by the hospital and instructed his client not to answer.
Thus plaintiff was precluded from ascertaining what opinions Dr. Seltzer held concerning the culpability of the hospital. To then turn around after the commencement of jury selection and "disclose" Dr. Seltzer as a witness who would testify as to negligence on the part of the hospital at least is violative of a sense of fairness. CT Page 6225
The hospital was a party to this action from its outset. Thus the defendants Dr. Seltzer and Cardiology Associates had many years within which to prepare the "defense" of apportionment. This defense did not arise when the case against the hospital was settled.
Lastly defense counsel takes issue with the ruling of the court in sustaining objections to questions.
 ". . . Did you have a right to expect that when ordering the blood, that (Dr. Short) would do so on an expeditious basis?"
 "My next question is: Doctor did you rely on Dr. Short to order blood in an expeditious fashion."
The defendant physician's state of mind was not relevant to the issues herein. This was a medical malpractice case and the ultimate inquiry was whether or not he violated the applicable objective standard of care and not whether he was motivated in his mind to action or inaction by reason of the conduct of another. See cases such as Logan v. Greenwich Hospital, 191 Conn. 282,299; Krattenstein v. Thomas, 7 Conn. App. 604.
It should also be noted that the court offered to permit the involved questions to be answered upon counsel assurance he would produce evidence that the applicable standard of care embraced the appropriateness of the attending physician's reliance upon the actions of a hospital resident. Counsel refused to offer assurance in this regard.
Motions denied.